UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62281-CIV-COHN/SELTZER

MICHAEL CUNNIFF,

     Plaintiff,

vs.

CHRISTIE SCHADE, Individually;
JUNELL SHIELDS, Individually, f/k/a
JUNELL MOREJON;
STEVEN HIGGINS, Individually;
CHRISTOPHER TROIANO, Individually, and the
CITY, a Florida
Municipal Corporation,

     Defendants.

_____/

## DEFENDANTS CHRISTIE SCHADE, JUNELL SHIELDS, STEVEN HIGGINS, CHRISTOPHER TROIANO AND THE CITY'S MOTION FOR SUMMARY JUDGMENT

Defendants, CHRISTIE SCHADE ("SCHADE"), JUNELL SHIELDS f/k/a/ JUNELL MOREJON ("SHIELDS"), STEVEN HIGGINS ("HIGGINS"), CHRISTOPHER TROIANO ("TROIANO") and the CITY ("CITY"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 56(c), and S.D. Fla. Local Rule 56.1(a), and file their Motion for Final Summary Judgment, and in support thereof state the following:

## INTRODUCTION

This civil action arises out of events that occurred on January 2, 2012 at an Apartment Complex known as Solmar on Sixth located at 408 NE 6th Street in Fort Lauderdale. Michael CUNNIFF was a resident of Apartment 120 in the complex and the events material to his claims

occurred at or in the apartment. At shortly after 2:29 a.m. Fort Lauderdale Dispatch received a call reporting a domestic disturbance at the first floor north tower. The information provided by the complaining party resulting in the call being classified as a Signal 38 which is a domestic disturbance. Patrol Officers SCHADE and SHIELDS were riding together in a marked patrol unit and they received the call for service from dispatch. They responded to the location described in the transmission and while they were en route they received additional information provided by another complainant. When they arrived at the complex they were not certain as to the precise location, but with the assistance of Alexandra Lobitz, a resident who made a 911 call they were directed to Apartment 120. The knocked on the door and CUNNIFF responded by partially opening the door. The events that followed this initial contact resulted in an emergency call for back-up (Code 3 10-94) to Apartment 120. Patrol Officers HIGGINS and TROIANO responded as back-up officers to the call for assistance. The events that followed SCHADE and SHIELDS arrival provide the basis for CUNNIFF's claims and the specific facts relating to those claims are detailed in the Statement of Material Facts and will be discussed below as they relate to the claims and defenses.

## THE CLAIMS

The Complaint [DE 1] contains 21 counts. The first 8 counts allege federal claims and the following 13 counts allege State law claims. All the federal claims are brought against Officers SCHADE, SHIELDS, HIGGINS and TROIANO in their individual capacities. There are no federal claims against the CITY. The State law claims are alleged as pendent claims pursuant to 28 U.S.C. § 1367(a) and are against the CITY and SCHADE, SHIELDS, HIGGINS and

TROIANO.

The federal claims asserted are as follows: Count I: Unlawful Search against SCHADE; Count II: Unlawful Search against SHIELDS; Count III: False Arrest against SCHADE, Count IV: False Arrest against SHIELDS; Count V: Excessive Force against SCHADE; Count VI: Excessive Force against SHIELDS; Count VII: Excessive Force against HIGGINS; Count VIII: Excessive Force against TROIANO.

The state law claims as asserted are as follows: Count IX: Invasion of Privacy against the CITY; Count X: Invasion of Privacy against SCHADE; Count XI: Invasion of Privacy against SHIELDS; Count XII: False Arrest against the CITY; Count XIII: False Arrest against SCHADE; Count XIV: False Arrest against SHIELDS; Count XV: Battery/Unnecessary Force against the CITY; Count XVI: Battery/Unnecessary Force against SCHADE; Count XVII: Battery/Unnecessary Force against SHIELDS; Count XVIII: Battery/Unnecessary Force against HIGGINS; Count XIX: Battery/Unnecessary Force against TROIANO; Count XX: Malicious Prosecution against SCHADE; Count XXI: Malicious Prosecution against SHIELDS.

## MEMORANDUM OF LAW

This Court has recently set forth the standards for summary judgment and qualified immunity in *Cutino v. Untch*, 79 F. Supp. 3d 1305 (S.D. Fla. 2015), *reconsideration denied*, *Cutino v. Untch*, 12-22201-CIV, 2015 WL 1855788 (S.D. Fla. 2015) and to the extent that the decision is applicable to issues presented herein it will be followed.

### A.    Summary Judgment Standards

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To satisfy this burden, the movant must demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

If the movant makes this initial showing, the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The nonmovant "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the jury could reasonably find for that party." *Walker*, 911 F.2d at 1577. If the evidence advanced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Cutino*, 79 F. Supp. 3d at 1310.

**B.     Qualified Immunity Standards**

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (internal quotations omitted). Such immunity is intended "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (internal quotations omitted). In this respect, qualified immunity " 'gives government officials breathing room to make reasonable but mistaken judgments.' " *Carroll v. Carman*, ——— U.S. ———, 135 S.Ct. 348, 350, 190 L.Ed.2d 311 (2014) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074,2085, 179 L.Ed.2d 1149 (2011)).

To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Wood*, 323 F.3d at 877 (internal quotation marks omitted). If the official makes this showing, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. *See Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir.2009)

To meet this burden, the plaintiff must prove (1) that the defendant violated a statutory or constitutional right and (2) that this right was "clearly established at the time of the challenged conduct." *Carroll*, 135 S.Ct. at 350. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' " *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate. *al-Kidd*, 131 S.Ct. at 2083.

As with other motions for summary judgment, a court analyzing

McINTOSH SCHWARTZ, P.L.
888 SOUTHEAST 3RD AVENUE - SUITE 201 - FORT LAUDERDALE, FL 33316 - TELEPHONE (954) 660-9888 FAX (954) 760-9531

qualified immunity at the summary-judgment stage "must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta,* 415 F.3d 1252, 1257 (11th Cir.2005). This approach "eliminates all issues of fact," and "the court has the plaintiff's best case before it." *Id.; see Tolan v. Cotton,* —— U.S. – ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam) (explaining that for either element of qualified immunity, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment"). *Cutino,* 79 F. Supp. 3d at 1311.

The qualified immunity standard is broad enough to cover some "mistaken judgment," and it shields from liability "all but the plainly incompetent or those who knowingly violate the law." *Lelieve v. Oroso,* 846 F. Supp. 2d 1294, 1300-01 (S.D. Fla. 2012).

## 1.  EXIGENT CIRCUMSTANCES

Although the Fourth Amendment shields one's home from unwanted and warrantless intrusions by law enforcement officers, "the ultimate touchstone of the Fourth Amendment is 'reasonableness,' [and thus,] the warrant requirement is subject to certain exceptions."  *Brigham City, Utah v. Stuart,* 547 U.S. 398, 126 S. Ct. 1943, 1947, 164 L.Ed.2d 650 (2006). Two "specifically established and well-delineated exceptions" are warrantless searches made pursuant to consent or under exigent circumstances. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). A warrant is not required where " 'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' " *Stuart,* 126 S.Ct. at 1947 (internal quotation marks omitted) (quoting *Mincey v. Arizona,* 437 U.S. 385, 393–94, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978)).

The police thus bear a heavy burden of proving that the exigent circumstances exception validates a warrantless entry or search of a home for any purpose. *Welsh,* 466 U.S. at 749–50, 104 S.Ct. at 2097; *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). The government meets that burden by demonstrating the existence of both probable cause and exigency. *United States v. Holloway,* 290 F.3d 1331, 1337 (11th Cir.2002). Where the exigency is an emergency, "probable cause exists where law enforcement officials 'reasonably believe' that someone is in danger." *United States v. Davis,* 313 F.3d 1300, 1302 (11th Cir.2002) (per curiam).

The exigent circumstances exception to the warrant requirement is based on the understanding that in some situations, "a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978). Thus, we will excuse a warrantless entry into the home "when probable cause exists, if 'exigent circumstances' make it impossible or impracticable to obtain a warrant." *United States v. McGregor*, 31 F.3d 1067, 1068–69 (11th Cir.1994). This "encompasses situations such as hot pursuit of a suspect, risk of removal or destruction of evidence, and danger to the arresting officers or the public." *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir.1986). We have found situations to be sufficiently exigent "where there is danger to human life." *Holloway*, 290 F.3d at 1334. "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Id.* at 1336. Accordingly, "police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Stuart*, 126 S.Ct. at 1946. *Bates v. Harvey*, 518 F.3d 1233, 1243-47 (11th Cir. 2008); *see Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002) (Although courts consider various factors in determining whether exigent circumstances existed, "[t]he essential question ... is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action.")

## 2.  UNCONSTITUTIONAL ARREST

CUNNIFF alleges that he was arrested in violation of his Fourth Amendment rights because the Officers lacked probable cause for his arrest.

It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998).  For probable cause to exist under federal or Florida law, "an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is

committing, or is about to commit an offense. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).

To receive qualified immunity, though, an officer need only have "arguable" probable cause for the arrest. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010). Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Whether arguable probable cause is present "depends on the elements of the alleged crime and the operative fact pattern. *Grider*, 618 F.3d at 1257; *Cutino*, 79 F. Supp. 3d at 1314; *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007).

### 3.  OBSTRUCTION

§ 843.02, Fla. Stat. Ann. provides:

"Whoever shall resist, obstruct, or oppose any officer...in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor[.]" To support a conviction under § 843.02, the alleged resistance or obstruction must occur while "the officer was engaged in the lawful execution of a legal duty." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003). Under Florida law, the lawful execution of a legal duty includes "an officer's (1) serving process, (2) legally detaining a person, and (3) asking a person for assistance with an ongoing emergency." *Id.*

In the qualified immunity context, the relevant question is whether there is "arguable" reasonable suspicion of criminal activity. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000); *see Storck*, 354 F.3d at 1316-17 ("the issue again is not whether [the manager] did, in fact, commit acts of obstruction and resistance or even, in fact, attempt to do so." (citation omitted) Rather, "the issue material to qualified immunity is whether a reasonable officer ... could have thought the facts were such that he could reasonably conclude that [the manager] was committing, or was about to attempt, acts of obstruction or resistance." *Post v. City of Fort*

*Lauderdale*, 7 F.3d 1552, 1559 n. 8 (11th Cir. 1993)).

The Court must consider whether the officers had arguable reasonable suspicion that CUNNIFF had committed an act of domestic violence. *Florence v. City of Lakeland, Florida*, 2015 WL 8323190, at *4-5 (M.D. Fla. December 9, 2015).

SCHADE and SHIELDS contend that they had a legal basis for detaining CUNNIFF and that they had both actual and arguable probable cause to arrest CUNNIFF for obstruction of their investigation as to whether an act of domestic violence had occurred. Based on the information provided to SCHADE and SHIELDS they had at least articulable suspicion to justify further inquiry of CUNNIFF as to whether domestic violence had occurred and whether the participants/victims were present in the apartment to which they had been directed. CUNNIFF obstructed their efforts by initially refusing to respond to their inquiries, by denying them access to the apartment and ultimately by refusing to comply with their reasonable instructions to leave the kitchen area to ensure their own safety. The totality of his actions gave rise to at least arguable probable cause to believe that CUNNIFF was guilty of the offense of obstruction. When SCHADE and SHIELDS arrived at the apartment door they possessed "arguable reasonable suspicion of criminal activity" and facts giving rise to exigent circumstances to determine whether there was actual danger to human life and/or whether the occupants were in need of immediate aid or assistance. CUNNIFF obstructed their lawful efforts to make the determinations required by the circumstances presented and by the information that they had been given. These are the type of circumstances faced by police officers whenever they are called upon to respond to a domestic disturbance complaint, but here they had specific information that was strongly suggestive of violence which mandated that they take definitive action to insure the safety of the occupants and to determine whether any person has been injured

-9-

McINTOSH SCHWARTZ, P.L.
868 SOUTHEAST 3RD AVENUE - SUITE 201 - FORT LAUDERDALE, FL 33316  - TELEPHONE (954) 660-2886 FAX (954) 760-9531

or is in need of immediate aid. The 911 call resulted in the transmission "heard males voice saying I will break every bone in your body" which provided additional detail to the initial call approximately two minutes earlier from another citizen "can hear banging on a door and also a male and female (fml) yelling and screaming" and "sounds physical" is strongly indicative that immediate action was necessary. Alexandra Lobitz was the person who made the 911 call at 2:31:23 and she directed SCHADE and SHIELDS to apartment 120. By the time SCHADE and SHIELDS gained entry they had at least arguable probable cause that domestic violence had occurred and CUNNIFF had obstructed their investigation by his actions. The facts provided to them coupled with CUNNIFF's actions provided sufficient legal basis for their entry into the apartment and for the arrest of Mr. CUNNIFF for obstruction.

### 4.   EXCESSIVE FORCE

CUNNIFF claims that the Officers are liable under § 1983 for violating his Fourth Amendment right not to be subjected to excessive force.

> The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force during a criminal apprehension. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S. Ct. 1865 (U.S. 1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Applying this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* A court must also bear in mind that "police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1865.

* * *

> [T]he Eleventh Circuit has offered police officers wide discretion
> in reacting with force when the police officer believes that a
> suspect resists arrest. (citing *Hoyt v. Cooks*, 672 F.3d 972, 977–78
> (11th Cir. 2012); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724,
> 739 (11th Cir. 2010); *Lewis v. City of W. Palm Beach, Fla.*, 561
> F.3d 1288, 1292 (11th Cir. 2009). *Cutino*, 79 F. Supp. 3d at 1312.

SCHADE and SHIELDS were justified in their use of force during their unsuccessful attempts to handcuff CUNNIFF. He resisted their efforts by bracing, tensing and using his superior strength to prevent them from getting both his hands in handcuffs. For him to make the argument that he did not resist their efforts when the evidence demonstrates that despite their best efforts they were unable to get him in handcuffs supports their contention that the force applied was not excessive. Their inability to accomplish the task at hand-getting him into handcuffs demonstrates that their use of force was not only appropriate but inadequate.

HIGGINS and TROIANO responded to a call for emergency back-up to the domestic disturbance complaint. They had the same information from Dispatch that SCHADE and SHIELDS had as well as the fact that their fellow officers were unable to deal with the situation. HIGGINS and TROIANO responded for the protection of their fellow officers. An emergency call for back-up by definition creates exigent circumstance requiring immediate action. When they arrived, they found their SCHADE and SHIELDS on the floor involved in a struggle with CUNNIFF. By the time they arrived CUNNIFF had already been "arrested," but SCHADE and SHIELDS had been unable to get him in handcuffs. The force that HIGGINS and TROIANO utilized was not unreasonable or excessive. Even if it could be said that the force exceeded that which was objectively reasonable they are still entitled to qualified immunity as assisting or backup officers. *Shepard v. Hallandale Beach Police Dept.*, 398 Fed. Appx. 480, 483-84 (11th

Cir. 2010) citing *Brent v. Ashley*, 247 F.3d 1294, 1305-06 (11ᵗʰ Cir. 2001).

## EXCESSIVE FORCE CLAIM SUBSUMED IN FALSE ARREST CLAIM

In the event the arrest is found to be unreasonable and not otherwise protected by the

doctrine of qualified immunity:

> Under this Circuit's law, however, a claim that any force in an
> illegal ... arrest is excessive is subsumed into the illegal ... arrest
> claim and is not a discrete excessive force claim." *Jackson*, 206
> F.3d at 1171; *see also Williamson v. Mills*, 65 F.3d 155, 158 (11th
> Cir. 1995) (holding that a claim that any force during a false arrest
> is excessive is subsumed into the false arrest claim itself because
> damages for false arrest include damages for use of force to effect
> that false arrest); *accord Motes v. Myers*, 810 F.2d 1055, 1059
> (11th Cir. 1987) ("it is obvious that if the jury finds the arrest
> unconstitutional, the use of force and the search were
> unconstitutional and they become elements of the damages for the
> § 1983 violation."). *Montanez v. Celaya*, 49 F. Supp. 3d 1010,
> 1016-17 (M.D. Fla. 2014).

## PENDENT JURISDICTION AND STATE LAW CLAIMS

The Court has discretion to exercise supplemental jurisdiction over the Florida state law

claims. 28 U.S.C.A. § 1367(a)  However, when a district court has dismissed all claims over which it

had original jurisdiction, the court has discretion to decline to exercise supplemental jurisdiction over

related state law claims. 28 U.S.C.A. § 1367(c). The Court may also decline to exercise supplemental

jurisdiction when the related claim raises a novel or complex issue of state law or if the State law

claim substantially predominates over the remaining federal claims or for other exceptional reasons.

The relevant statute provides, in pertinent part:

> The district courts may decline to exercise supplemental
> jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

If the Court grants summary judgment on the federal claims (Counts I-VIII) it should decline to exercise supplemental jurisdiction over the State law claims. *Lacasa v. Townsley*, 883 F. Supp. 2d 1231, 1238 (S.D. Fla. 2012).

Even if the Court declines to grant summary judgment as to the federal claims it should nevertheless decline to exercise supplemental jurisdiction over the remaining 13 counts that allege State law claims. A review of the Complaint demonstrates that the State law claims predominate over the federal claims. There are 13 State law claims against the four individual officers and the CITY. There are no federal claims against the CITY. There is no reason for this Court to deal with 13 additional claims that present complex questions of state law that would be more properly addressed in state court.

## STATE LAW CLAIMS

### INVASION OF PRIVACY

The tort of invasion of privacy is ordinarily considered to encompass four categories, one of which consists of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home...." *Guin v. City of Riviera Beach,* 388 So.2d 604, 606 (Fla.Ct.App.1980) (quoting W. Prosser, Torts § 117 at 807 (4th ed. 1971)). Florida has recognized the tort of invasion of privacy at least to this limited extent. *Id.*

However, law enforcement personnel have a right, under

appropriate circumstances, to enter upon private property. *Id.*
"When the lawful performance of his duty requires that an officer
enter upon private property to make a general inquiry, such an
entry is justifiable." *State v. Garcia,* 374 So. 2d 601, 603 (Fla. 3d
DCA 1979). And where officers lawfully enter private property, no
cause of action for invasion of privacy can stand. *Guin,* 388 So.2d
at 606.

Accordingly, the sustainability of Plaintiff's invasion of privacy
claim hinges on the permissibility of the Defendant officers' entry.
A warrantless search is permissible where both probable cause and
exigent circumstances exist. *United States v. Tobin,* 923 F.2d 1506,
1510 (11th Cir.1991). The same holds true for in-home warrantless
arrests. *See Parker v. Allen,* 565 F.3d 1258, 1290 (11th Cir.2009)
*Feliciano v. City of Miami Beach*, 847 F. Supp. 2d 1359, 1368
(S.D. Fla. 2012).

For the reasons already presented the entry into the apartment was justified so the

invasion of privacy claims must fail.


## FALSE ARREST

The standard for determining whether probable cause exists
is the same under Florida and federal law. *Rankin v. Evans,* 133
F.3d 1425, 1435-36 (11th Cir. 1998). (This Circuit has concluded
that the standard for determining the existence of probable cause is
the same under both Florida and federal law—whether " 'a
reasonable man would have believed [probable cause existed] had
he known all of the facts known by the officer.' " *United States v.
Ullrich,* 580 F.2d 765, 769 (5th Cir.1978) (quoting *State v. Outten,*
206 So.2d 392, 397 (Fla.1968)). *See also United States v.
McDonald,* 606 F.2d 552, 553 n. 1 (5th Cir.1979) (*per curiam*)
(stating that "Florida's standard of probable cause for a lawful
arrest is the same as that required by the Fourth Amendment");
*Wright v. State,* 418 So.2d 1087, 1094 (Fla. 1st DCA 1982)
(concluding that the Florida standard for probable cause is no more
restrictive than the federal standard and is in effect a mirror image
of that standard). In order for probable cause to exist, "an arrest
[must] be objectively reasonable under the totality of the
circumstances." *Bailey,* 956 F.2d at 1119; *see also State v. Scott,*
641 So.2d 517, 519 (Fla. 3d DCA 1994). This standard is met
when "the facts and circumstances within the officer's knowledge,
of which he or she has reasonably trustworthy information, would

cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir.1995); *see also Elliott v. State,* 597 So.2d 916, 918 (Fla. 4th DCA 1992). "Probable cause requires more than mere suspicion, but does not require convincing proof." *Bailey,* 956 F.2d at 1120; *see also Scott,* 641 So.2d at 519 ("[T]he facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as the facts necessary to support a conviction."). In determining whether probable cause exists, " 'we deal with probabilities ... [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Revels,* 666 So.2d at 215 (quoting *Illinois v. Gates,* 462 U.S. 213, 229–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)).

The only difference in the probable cause analysis applicable to the state and federal claims at issue here is which party carried the burden of proving whether probable cause existed. The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law. *See Bolanos v. Metro. Dade County*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996) (probable cause bars a state claim for false arrest or false imprisonment); *DeMarie v. Jefferson Stores, Inc.,* 442 So.2d 1014, 1016 n. 1 (Fla. 3d DCA 1983) ("[T]he existence of probable cause is a part of the defense to a false arrest action which must be shown by the defendant."). Accordingly, defendants had the burden of demonstrating the existence of probable cause as a defense to the state claim. However, plaintiffs had the burden of demonstrating the absence of probable cause in order to succeed in their § 1983 claim.

For the reasons already discussed the arrest was justified and the State law claims for false arrest must fail.

## BATTERY/UNNECESSARY FORCE

As to the claim against the individuals, "[t]raditionally, a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages

only where the force used is clearly excessive." *See Jennings v. City of Winter Park*, 250 So. 2d 900 (Fla. 4th DCA 1971). If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery. *See Mazzilli v. Doud*, 485 So. 2d 477, 481 (Fla. 3d DCA 1986) (Schwartz, C.J., specially concurring in part), *rev. dismissed,* 492 So.2d 1333 (Fla.1986).

A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances. *Dixon v. State*, 132 So. 684 (Fla. 1931); *City of Miami v. Albro*, 120 So. 2d 23 (Fla. 3d DCA 1960); *Hutchinson v. Lott*, 110 So. 2d 442 (Fla. 1st DCA 1959), *cert. denied,* 115 So.2d 415 (Fla.1959); *Cutino*, 79 F.Supp.3d at 1315. (force not "clearly excessive") Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest." § 776.05(1), Fla.Stat. (1995).

If the use of force is justified there is no basis for a claim for vicarious liability against the CITY. However even if the force were found not to be justified under state law, the Complaint alleges that unnecessary force was used. Florida law does not recognize a cause of action for the negligent use of force in making an arrest. *See City of Miami v. Ross*, 695 So. 2d 486, 487 (Fla. 3d DCA 1997) (concluding that "there is no such cause of action as 'negligent' use of excessive force"); *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) ("[I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort."). "[I]t is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." *Lewis*, 561 F.3d at 1294.

The allegations clearly demonstrate that the claim is for unlawful and intentional conduct.

While under certain circumstances a force claim can be pleaded in such a way to present a jury

issue as to vicarious liability against a municipality, this claim eliminates that possibility. *See e.g.*

*Baldwin v. City of Fort Lauderdale*, 961 So. 2d 1015, 1016 (Fla. 4th DCA 2007).

For the reasons already discussed it is clear that excessive or unnecessary force was not

used.

## MALICIOUS PROSECUTION

The elements of a claim for malicious prosecution in Florida are as follows:

> (1) an original criminal or civil judicial proceeding against the present
> plaintiff was commenced or continued; (2) the present defendant was
> the legal cause of the original proceeding against the present plaintiff
> as the defendant in the original proceeding; (3) the termination of the
> original proceeding constituted a bona fide termination of that
> proceeding in favor of the present plaintiff; (4) there was an absence
> of probable cause for the original proceeding; (5) there was malice on
> the part of the present defendant; and (6) the plaintiff suffered damage
> as a result of the original proceeding. *Durkin v. Davis*, 814 So. 2d
> 1246, 1248 (Fla. 2d DCA 2002); *Alamo Rent-A-Car, Inc. v. Mancusi*,
> 632 So. 2d 1352, 1355 (Fla. 1994); *Cutino*, 79 F.Supp.3d at 1315.

Probable cause is a defense not only to the false arrest claims, but it also a defense to the

malicious prosecution claim.  Moreover, where the decisions as to what charges to bring and whether

to prosecute the offense(s) charged are made by the  prosecuting authority the arresting officer(s)

cannot be said to have commenced or continued the criminal proceeding. The State Attorney chose to

file an information charging CUNNIFF with obstruction and declined to file an information charging

resisting with violence. There is no evidence that SCHADE or SHIELDS had any input as to this

decision or the ultimate decision to bring the case to trial. The State Attorney concluded on at least

two occasions that sufficient probable cause existed to justify trying the case with the expectation

that there was sufficient evidence to obtain a conviction. *Harris v. Lewis State Bank, 482 So. 2d 1378, 1381 n. 9 (Fla. 1st DCA 1986).*

SCHADE and SHIELDS should be insulated from claims for malicious prosecution.

## CONCLUSION

For the reasons cited herein, Defendants SCHADE, SHIELDS, HIGGINS, TROIANO and the CITY respectfully submit that they are entitled to summary judgment as a matter of law.

Dated:  May 2, 2016
        Fort Lauderdale, Florida

Respectfully submitted,

    s/Robert H. Schwartz
ROBERT H. SCHWARTZ (0301167)
rhs@mcintoshschwartz.com
McINTOSH SCHWARTZ, P.L.
888 Southeast 3rd Avenue, Suite 201
Fort Lauderdale, Florida 33316
Direct:        (954) 556-1483
Facsimile:     (954) 760-9531
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

__s/Robert H. Schwartz_____
ROBERT H. SCHWARTZ

**CUNNIFF v. SCHADE, Christie, et al.**
**Case No. 15-62281-CIV-COHN/SELTZER**

**Service List**

Hugh L. Koerner (716952)
hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, Florida 33021
Telephone:      (954) 522-1235
Facsimile:      (954) 522-1176
**Attorneys for Plaintiff**

McINTOSH SCHWARTZ, P.L.
888 SOUTHEAST 3RD AVENUE · SUITE 201 · FORT LAUDERDALE, FL 33316 · TELEPHONE (954) 660-9888 FAX (954) 760-9531